**SAM'S CLUB, A DIVISION OF WAL– MART CORPORATION, Petitioner/Cross–Respondent,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent/Cross– Petitioner.**

Nos. 96–6493, 96–6586.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 3, 1998.

Decided April 15, 1998.

655

Carey A. DeWitt (argued and briefed), Joseph M. Rogowski, II (briefed), Butzel Long, Detroit, MI, for Petitioner/Cross–Respondent.

Aileen A. Armstrong (briefed), Deputy Assoc. Gen. Counsel, Jeffrey Horowitz (argued and briefed), National Labor Relations Board, Appellate Court Branch, Washington, DC, Margaret Gaines Neigus (briefed), National Labor Relations Board, Washington, DC, for Respondent/Cross–Petitioner.

Before: MERRITT, KENNEDY, and BOGGS, Circuit Judges.

MERRITT, Circuit Judge.

In this case, Sam's Club petitions for review of the National Labor Relations Board's order finding that the company committed unfair labor practices, and the Board cross-petitions for enforcement of its order. The facts are dense and require a lengthy recitation. A three-member panel of the Board found that Sam's Club disciplined one of its employees, Robin Zaas, made coercive statements to her, and denied her a raise because she circulated a petition regarding a wage grievance and distributed NLRB informational pamphlets to her co-workers. The Board ordered the company to cease and desist from engaging in unlawful conduct and to reimburse Zaas for wages lost as a result of this conduct. Sam's Club contends that the Board's decision is not supported by substantial evidence because it rests solely on Zaas's uncorroborated testimony. Since much of her testimony is corroborated by reasonable inferences drawn from the circumstantial evidence in the record, and in light of the deference we owe to the Board's factual findings, we deny the company's petition for review and grant the Board's request for enforcement.

## I.

Robin Zaas is an employee of Sam's Club, a company engaged in the retail sale of bulk food and other items. In 1995 she filed an unfair labor practice charge against the company, contending that it violated §§ 8(a)(1) & 8(a)(3) of the National Labor Relations Act by disciplining her and denying her a raise in retaliation for engaging in protected concerted activity. A hearing was held before Administrative Law Judge Lowell Goerlich in September 1995. In response to Zaas's charge, the company claimed that it disciplined her for making threatening comments and denied Zaas's requests for a raise because she had problems with teamwork and because she was already being paid above the company's guideline wage for an employee with her experience.

The evidence presented at the hearing showed that Zaas drafted a petition in September 1994 addressing a wage disparity between the store where she works and other company and competitor stores in the same area. The petition stated as follows:

> We the partners of Sam's Club # 6657 expect fair and equal treatment as well as compensation levels equivalent to other Sam's Club stores and other competing retail positions in the area. This petition shall serve to communicate our attitude and concerns to Wal–Mart and Sam's Club management.

Zaas circulated this petition in September and October 1994, during her non-working hours. Approximately forty of Zaas's co-workers signed the petition, which she presented to management on October 6, 1994. Sam's Club's regional manager, Sean Jackson, gave a copy of the petition to David Smith, who had taken over as general manager of the store in late September. Smith

testified that he was aware Zaas had been circulating a petition before he received a copy.

Smith called Zaas into his office on October 17, 1994, and presented her with a written reprimand. He told Zaas that other employees had informed him that she had intimidated them while she was complaining about some of her superiors and that she threatened to have her "state trooper friends" harass these superiors. Zaas was alleged to have made most of these threatening statements on September 13. Although Smith did not mention the petition during the October 17 meeting, Zaas believed that it was the basis for her punishment. She testified that she refused to sign the disciplinary form because she believed the charges were false. Zaas claimed that Smith told her to "get your ass back in here" and sign the write-up or be fired. When she again refused to sign the form, Smith tore it up and prepared a "second-level" disciplinary form which omitted the reference to the "state trooper" threats. The second form merely stated that Zaas had been heard complaining about the way her supervisors were treating her and that she refused to sign the first form. Zaas also refused to sign the second write-up, which Smith placed in her file.

Smith testified that he disciplined Zaas for making threatening comments and not for circulating the petition. He acknowledged tearing up the first form and filling out a second, more generally worded form, which he hoped Zaas would be willing to sign. Smith admitted warning Zaas that her failure to sign the form could result in termination, but he denied using the words and the tone Zaas attributed to him. Smith testified that he placed the second form in Zaas's file and refused her subsequent requests to remove it because it was supported by witness statements. The company removed the form from Zaas's file only after she filed an unfair labor practices charge. Julie Ann Cape, another Sam's Club employee who was present as a witness at the October 17 meeting, testified that Smith referred to the state trooper remark as unacceptable behavior but that he did not mention the petition. Cape did not recall hearing Smith swear at Zaas or seeing him tear up the form.

Zaas testified that her superiors repeatedly rebuffed her requests for a raise in late 1994 and early 1995, often linking the denial with the petition. She described several encounters in which she says her superiors made coercive statements to her. Zaas testified that in late October district manager James Moffat told her to stop circulating petitions, to keep her mouth shut, and to mind her own business. She testified that he also told her she would not get a raise. Moffat denied making these statements. Zaas attributed similar statements to Wal-Mart regional vice president Gary Nebinger, with whom she spoke on the telephone in late October 1994. Nebinger admitted that Smith had informed him by the time of this conversation that Zaas circulated a petition. He denied threatening Zaas with respect to the petition or making any other unlawful statement.

Zaas testified about similar encounters that occurred in early 1995, after she began putting NLRB informational pamphlets in the store's break room. She testified about a meeting she had with Smith and assistant store manager Matthew Brown in January 1995, during which Smith told her, "You're not getting your raise and you're putting pamphlets in the break room. You're circulating petitions. You're causing a lot of trouble in this club." She claimed that Brown made similar remarks during the meeting. Smith and Brown recalled the meeting but denied mentioning the petition or the pamphlets. Finally, Zaas testified that Smith and Brown again referred to the petition and the pamphlets when she approached them in February to repeat her request for a raise and to ask why the pamphlets were being thrown away. Smith and Brown denied making coercive statements at this time. Smith told Zaas that the pamphlets were discarded pursuant to the company's standard cleaning procedures. With respect to the raise, Smith and Brown told Zaas that although her performance was satisfactory, she was not entitled to a raise because of her lack of teamwork. They testified that they had a number of specific instances in mind when they told Zaas about her teamwork

problem, but they did not identify these to Zaas at the time.

Sam's Club offered evidence to show that Zaas would not have received a raise even if she had not been engaged in protected activity. It gave two explanations for the denial of Zaas's requests for a raise. First, the company argued that Zaas did not receive a raise because she was already being paid in excess of its guideline for an employee with her experience. Second, the company argued that Zaas did not receive a raise because she had problems with teamwork, not because of her protected activity. In support of this argument, Sam's Club pointed to the "state trooper" comment and several other alleged confrontations between Zaas and other employees. The company offered the written statements of several employees to show that Zaas had (1) threatened to "punch out" a coworker who was uninterested in speaking to her, (2) yelled at another coworker for closing the hot dog stand when Zaas wanted a "slushie," (3) grabbed a coworker's sleeve in an attempt to get her to write a letter to the NLRB, (4) refused to open a cash register when asked to do so by a supervisor, (5) made a disparaging comment about a disabled employee, and (6) stated, "My area looks like trash just like the rest of the place," within earshot of customers when asked by a supervisor whether the floor in her part of the store was clean. In further support of its position, the company pointed out that Zaas in fact received a raise in April 1995.

Following the hearing, the ALJ dismissed as moot the charge that the written disciplinary form Smith issued to Zaas in October 1994 constituted an unfair labor practice because the company removed the form from Zaas's file after she filed her original charge. The ALJ concluded, however, that Zaas's superiors made seven coercive statements, each of which constituted a separate violation § 8(a)(1). He also concluded—based largely on these statements—that Sam's Club denied Zaas's requests for a raise to punish her for circulating the petition and distributing NLRB pamphlets. The ALJ rejected the company's explanations as pretextual. He found unpersuasive the company's reliance on the incidents that supposedly demonstrated her problem with teamwork, noting that most of these events were never discussed with Zaas directly, either as a basis for disciplining her or as a reason for denying her raise request. The ALJ found that the real motive for the denial was to punish Zaas for the petition and the pamphlets and hold her out as an example to her coworkers.

In reaching his conclusions, the ALJ found that Zaas was a credible and honest witness and reasoned that she was unlikely to lie because, as a current employee, she had "booked the employer's disfavor and risked reprisal." He "credited her as to all findings based on her testimony." On the other hand, the ALJ stated that the demeanor of the company's witnesses led him to believe "the truth to be the opposite of what was asserted." The ALJ asserted that he had considered all the testimony presented, but he did not provide particularized explanations for discrediting the testimony of each of the company's witnesses.

A three-member panel of the Board affirmed and adopted the ALJ's rulings, findings, and conclusions with respect to Sam's Club's denial of Zaas's request for a raise and the coercive statements made by Smith, Moffat, Brown, and Nebinger. The Board rejected the ALJ's conclusion with regard to the mootness of the disciplinary form. It found that the company's removal of the form from Zaas's file did not meet its requirements for the repudiation of unlawful conduct. Concluding that the timing of the disciplinary write-up corroborated Zaas's testimony and confirmed that it was intended to discourage her from engaging in protected activity, the Board found that the write-up constituted a separate violation of § 8(a)(1). It ordered Sam's Club to cease and desist from interfering with protected concerted activity and to make Zaas whole for any loss of earnings she experienced as a result of the company's unlawful conduct.

## II.

The sole issue on appeal is whether the Board's decision is supported by substantial evidence on the record considered as a whole. The company challenges the Board's factual

findings and credibility determinations with respect to the seven coercive statements allegedly made to Zaas by Smith, Moffat, Brown, and Nebinger; the denial of Zaas's requests for a raise; and the issuance of the written disciplinary form on October 17, 1994.

Sam's Club contends that the Board's decision should be set aside because it rests solely on Zaas's uncorroborated testimony. In support of this argument, the company relies on our statement in *NLRB v. Container Corporation of America*, 649 F.2d 1213 (6th Cir.1981), that "[t]he uncorroborated testimony of an interested charging party does not amount to substantial evidence of an unfair labor practice." *Id.* at 1216. Taken out of context, this language suggests that the uncorroborated testimony of an interested charging party may never amount to substantial evidence. As the company conceded at oral argument, however, our case law makes it clear that the uncorroborated and self-serving statements of a party who stands to benefit from an award of back pay may, standing alone, constitute substantial evidence where such testimony is reasonably deemed to be credible and trustworthy, and where it is not undermined by evidence to the contrary. *Compare NLRB v. Buckhorn Hazard Coal Corp.*, 472 F.2d 53, 55–56 (6th Cir.1973) (per curiam) (explicitly rejecting proposition that uncorroborated testimony of charging party may never constitute substantial evidence), *with NLRB v. Elias Bros. Big Boy, Inc.*, 327 F.2d 421, 426–27 (6th Cir.1964) (rejecting Board's finding that uncorroborated testimony of interested charging party amounted to substantial evidence on one issue where trial examiner had explicitly found that she testified falsely on three other subjects), *overruled on different grounds by NLRB v. Town & Country Elec., Inc.*, 516 U.S. 85, 88, 116 S.Ct. 450, 452–53, 133 L.Ed.2d 371 (1995). In any event, only a portion of the Board's decision actually rests on Zaas's uncorroborated testimony alone; the remainder is also supported by reasonable inferences drawn from the circumstantial evidence in the record.

## A. The coercive statements made by Zaas's superiors

The company challenges the Board's determination that Zaas's supervisors made a series of coercive statements that violated § 8(a)(1) of the Act. The company challenges the fact, but not the legal significance, of these statements. The Board relied exclusively on Zaas's testimony in finding that her superiors repeatedly chastised her for circulating the petition and for distributing pamphlets. At the hearing, Zaas described several conversations in which her superiors—in particular, David Smith, James Moffat, Gary Nebinger, and Matthew Brown—referenced these activities and told her to stop "causing trouble." Smith, Moffat, Brown, and Nebinger admitted to having the conversations with Zaas but uniformly denied commenting to her about the petition or the pamphlets. The ALJ found that these individuals made seven coercive comments that violated the Act, and the Board adopted this finding. In reaching this conclusion, the ALJ found Zaas's testimony regarding the content of these conversations to be credible, and he discredited the conflicting testimony of Zaas's superiors. Recognizing that the ALJ—who saw and heard the witnesses testify—was in a better position to judge witness credibility, the Board accepted and adopted these determinations.

We see no basis for overturning these determinations on appeal. The conversations in question were private, involving only Zaas and either one or two of her superiors. Neither the General Counsel nor the company was able to offer the statements of disinterested third-party witnesses or tape recordings to support its version of events. The ALJ was therefore forced to choose between the participants' conflicting accounts of what was said during each of these private conversations. Based on his observation of the participants' testimony, he concluded that Zaas was telling the truth and that Smith, Moffat, Brown, and Nebinger were not. We will not set aside "[t]he Board's choice between conflicting testimony ... simply because this court 'would justifiably have made a different choice had the matter before it been *de novo.*'" *Local Union No. 948, Int'l*

*Bhd. of Elec. Workers v. NLRB,* 697 F.2d 113, 117 (6th Cir.1982) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951)); *see also Tony Scott Trucking, Inc. v. NLRB,* 821 F.2d 312, 315 (6th Cir.1987) ("Deference to the Board's factual findings is particularly appropriate where the record is fraught with conflicting testimony and essential credibility determinations have been made.") (citation and internal quotation marks omitted).

Sam's Club identifies several factors that purportedly undermine the ALJ's credibility determinations with respect to the coercive statements. The company argues that Zaas had a motive to lie because she stood to gain from an award of back pay in the event of a decision against the company. As the ALJ pointed out in his opinion, however, Zaas also had a reason not to lie because she risked reprisal by testifying against the company as a current employee. Moreover, Smith, Brown, and Nebinger were still company employees at the time of the hearing and had as much interest in the outcome of the case as Zaas. Sam's Club suggests that Moffat's testimony was entitled to more weight because he was no longer a Sam's Club employee at the time of the hearing and therefore had nothing to gain by testifying untruthfully. That the ALJ failed explicitly to recognize that Moffat was no longer an employee of Sam's Club at the time of his testimony does not mean he neglected to consider this factor in making his credibility determinations.

■ Credibility findings may rest on a number of factors in addition to the witness's interest in the subject matter, including his demeanor and his manner of testifying. In this case, the ALJ stated that his credibility determinations were based primarily on the demeanor of the witnesses and his observation of their testimony, factors which are generally difficult to put into words. This court will ordinarily not disturb credibility findings by an ALJ who observed the witnesses testify where these findings are based on demeanor. *See Torbitt & Castleman, Inc. v. NLRB,* 123 F.3d 899, 905 (6th Cir.1997). In light of his reliance on demeanor, the ALJ's failure to identify with particularity the potential incentives of each witness does

not undermine his credibility assessments. *See Uniroyal, Inc. v. NLRB,* 519 F.2d 1342, 1343 (6th Cir.1975) (failure of ALJ to explain in detail his reasons for discrediting the testimony of company witnesses does not undermine determination where record contains evidence sufficient to support Board's factual findings). We find nothing in the record that renders irrational his credibility findings with respect to the conversations between Zaas and her superiors, and we are convinced that the factual conclusions he drew from the credited testimony were reasonable. *NLRB v. Valley Plaza, Inc.,* 715 F.2d 237, 242 (6th Cir.1983) (citations omitted) ("the factual findings of the ALJ are to be examined for 'reasonableness' ... and credibility determinations must be accepted unless it is clear there is no rational basis for them."). In the absence of evidence compelling a contrary conclusion, Zaas's testimony constitutes substantial evidence to support the Board's determination that her superiors made coercive statements to her during late 1994 and early 1995.

**B. Denial of Zaas's requests for a raise**

■ The company also challenges the Board's conclusion that the company denied Zaas a raise in retaliation for her protected activity. In reaching this conclusion, the Board relied heavily on Zaas's testimony about the coercive statements of her superiors, several of which were made in direct response to her raise requests. After crediting Zaas's testimony about these statements, the ALJ concluded that the General Counsel had established a prima facie case that Zaas's protected activity was a motivating factor in the refusal of her requests for a raise. This conclusion was based on the same credibility findings we have already determined were rational. The ALJ inferred from the credited testimony that the company denied Zaas's requests at least in part because she had circulated the petition and distributed pamphlets. This finding was reasonable, and we will not disturb it on appeal.

■ Once the General Counsel made out a prima facie case that the raise denial was unlawfully motivated, the burden shifted to the company to establish that it would have

denied Zaas a raise even in the absence of her protected activity. *See Republic Die and Tool Co. v. NLRB*, 680 F.2d 463, 464–65 (6th Cir.1982) (adopting the Board's "mixed motive" analysis from *Wright Line, a Division of Wright Line, Inc.*, 251 NLRB 1083, 1980 WL 12312 (1980)). The ALJ and the Board rejected the company's explanations. On appeal, Sam's Club reiterates its argument that it would have denied Zaas's requests for a raise regardless of whether she had engaged in protected concerted activity.

The company asserts that Zaas did not get a raise because she was already being paid more than its guidelines prescribed for an employee with her experience and her level of responsibility. Smith testified that he explained this to Zaas and suggested she take on additional responsibility, such as operating a forklift, to warrant a raise, but that she declined to do so. The Board rejected this explanation because the company failed to demonstrate that it made a practice of conditioning raises on the employee's assumption of additional duties. Regardless of whether Smith told Zaas she needed to assume more responsibility to get a raise, it is clear that the company was aware when it denied Zaas's requests for a raise that she had circulated a petition and distributed NLRB pamphlets to her coworkers. Under the circumstances—and in light of the credited testimony about the coercive statements made by Smith and Zaas's other superiors—the Board's rejection of this explanation was not unreasonable.

Sam's Club also points to the written statements it introduced at the hearing regarding the incidents it claims demonstrate Zaas's problems with teamwork. The company contends that these statements, which it solicited from employees, show that Zaas had a problem getting along with her coworkers, and that this difficulty was the reason she did not receive a raise. The ALJ concluded, and the Board agreed, that although Zaas's supervisors may have warned her informally about some of the events that demonstrated her teamwork problem, they never told her that the incidents described above would be the basis for the denial of a raise. Smith, who was responsible for making raise deter-

minations, testified that he never discussed these incidents with Zaas because they "were never a coaching issue." As a result, Zaas was never given the opportunity to explain or give her version of the incidents in question. The Board concluded that the company would have discussed these incidents with Zaas in detail had they been the true reason for the denial of her raise requests. In light of the company's failure to identify these incidents to Zaas at the time they denied her raise requests, and in light of the credited testimony about the coercive comments of her superiors during this period, the Board reasonably concluded that the incidents described in the statements—assuming they did in fact occur—were not the real reason for the denial.

The company also points out that it gave Zaas a raise in April 1995 and that a number of other employees who signed the petition received raises sooner. It contends that these facts demonstrate that Zaas's protected activity was not a basis for the refusal of her requests for a raise. The company has not explained why Zaas received a raise in April 1995; it is unclear whether this was a merit raise or a standard periodic raise. Nor has Sam's Club explained how that raise has any bearing on its motivation for refusing Zaas's raise requests months earlier. Likewise, the fact that the company responded to the petition by giving a number of employees raises does not demonstrate that the petition was not the reason it denied Zaas a raise. The petition brought to light the fact that a number of store employees were being paid at below Sam's Club guidelines. As a direct result of Zaas's conduct, the company was forced to give a number of raises in order to bring all employees' wages up to guideline levels. It is easy to see why the company might wish to punish Zaas for this conduct.

In sum, the company offered some evidence tending to show that Zaas had problems with her coworkers and that she was being paid above the minimum level for an employee with her experience. This evidence might support the conclusion that Sam's Club did not deny Zaas a raise solely because she circulated a petition and distributed NLRB pamphlets. Nevertheless, there

is still substantial evidence in the record considered as a whole to support the Board's conclusion that Zaas's protected concerted activity was the reason for the denial. That the company's evidence might have supported a different conclusion does not warrant reversal.

### C. The disciplinary form

■ Sam's Club maintains that the Board incorrectly reversed the ALJ's determination that the removal of Zaas's disciplinary write-up from the file after she filed her unfair labor practice charge rendered the issue moot. The Board determined that the removal of the form from Zaas's file was insufficient to constitute a disavowal of unlawful conduct and that it therefore did not render moot the issue of the disciplinary form. The Board's rule regarding repudiation has been stated as follows:

> It is settled that under certain circumstances an employer may relieve himself of liability for unlawful conduct by repudiating the conduct. To be effective, however, such repudiation must be "timely," "unambiguous," "specific in nature to the coercive conduct," and "free from other proscribed illegal conduct." Furthermore, there must be adequate publication of the repudiation to the employees involved and there must be no proscribed conduct on the employer's part after the publication. And, finally, the Board has pointed out that such repudiation or disavowal of coercive conduct should give assurances to employees that in the future their employer will not interfere with the exercise of their ... rights.

*Passavant Mem'l Area Hosp.*, 237 NLRB 138, 138–39, 1978 WL 7798 (1978) (citations omitted), *cited in Uforma/Shelby Business Forms, Inc. v. NLRB*, 111 F.3d 1284, 1295 (6th Cir.1997). The mere removal of the form from Zaas's file falls short of the "unambiguous" repudiation contemplated by this standard. Moreover, the Board reasonably determined that the company engaged in unlawful conduct after removing the form when it denied Zaas's requests for a raise. Under these circumstances, the Board properly reversed the ALJ's mootness determination.

■ Turning to the merits of the issue, there is substantial evidence in the record considered as a whole to support the Board's conclusion that the company disciplined Zaas on October 17, 1994, to punish her for circulating the petition. It is undisputed that Smith did not mention the petition to Zaas as a basis for disciplining her. Nevertheless, the Board concluded based on the sequence of relevant events that the petition was the true basis for Zaas's punishment. The Board's reliance on circumstantial evidence was proper. *Buckhorn Hazard Coal Corp.*, 472 F.2d at 55 ("Since direct evidence of motivation which is not also self-serving is seldom available, the motivation required to establish unlawful discrimination may be shown by less than direct evidence."); *accord Dayton Typographic Serv., Inc. v. NLRB*, 778 F.2d 1188, 1192–93 (6th Cir.1985).

Sam's Club contends that because Smith did not refer to the petition during the October 17 meeting, it could not have been the reason for Zaas's punishment. Relying on employee statements asserting that Zaas made threatening comments regarding her superiors, the company argues that these threats were the basis for the discipline. The company maintains that Zaas made one of these threatening remarks on October 14, only three days before she was disciplined, and contends that Smith was unaware of any of the threats—including those allegedly made by Zaas on September 13—until this time.

Even accepting this statement of the facts, we see no basis for setting aside the Board's determination regarding the disciplinary form. Regardless of whether Zaas actually made the threatening statements attributed to her by the company, and regardless of the reasons Smith gave Zaas for the reprimand, the Board's conclusion—based on the timing of relevant events—that Smith issued the disciplinary form to punish Zaas for circulating the petition was reasonable. Smith disciplined Zaas nearly a month after she is alleged to have made the "state trooper" threats, but only eleven days after Sam's Club became aware that she was circulating a petition. Irrespective of when Smith became aware of the "state trooper" threats, it

is clear that his predecessor as store manager learned of them shortly after they were made. The company did not discipline Zaas at that time; it disciplined her only after management learned that she was responsible for circulating the petition. Moreover, the ALJ credited Zaas's testimony that Moffat refused her request to remove the write-up from her file two weeks later, stating that he was going "to teach her a lesson" for causing trouble by circulating the petition. Although these facts do not establish conclusively that the Zaas was disciplined for engaging in protected activity, they support the Board's determination. *See NLRB v. Aquatech, Inc.,* 926 F.2d 538, 547 (6th Cir.1991) (circumstances and timing of disciplinary action may support inference of unfair labor practice); *Dayton Typographic Serv.,* 778 F.2d at 1193 (same).

### III.

There is substantial evidence in the record considered as a whole to support the Board's determination that Sam's Club violated the Act by disciplining Robin Zaas, by making coercive statements to her, and by denying her requests for a raise. We therefore grant the Board's petition for enforcement and deny Sam's Club's petition for review.