CONTINENTAL DISTRIBUTING CO.,
INC., et al., Plaintiffs,

v.

SOMERSET IMPORTERS, LTD.,
Defendant.

No. 76 C 767.

United States District Court,
N. D. Illinois, E. D.

April 27, 1976.

James E. Hastings, Chadwell, Kayser, Ruggles, McGee & Hastings, Chicago, Ill., for plaintiffs.

Burditt & Calkins, George M. Burditt, Richard M. Calkins and Tom Scheuneman, Chicago, Ill., for defendant.

MEMORANDUM

LEIGHTON, District Judge.

## I.

This is a motion for a preliminary injunction filed pursuant to Rule 65 of the Federal Rules of Civil Procedure by three wholesale liquor distributors who seek to enjoin the termination of a distributorship agreement. In a two-count complaint, the distributors charge defendant with violations of federal and anti-trust laws and breach of a contract. The court has heard the motion, received evidence and has considered the briefs of the parties. The issue to be resolved is whether a showing has been made for grant of preliminary injunctive relief.

## II.

Plaintiffs Continental Distributing Co., Inc., Merchants Liquor Distributors, Inc., and Sheridan Wholesale Liquors, Inc., d/b/a Steuben County Wine & Liquor Co. are wholesale distributors of alcoholic beverages. Continental sells liquor at wholesale in the counties of Cook, DuPage, Kane, Kendall, Will and Grundy. Merchants sells in Cook and DuPage Counties. Sheridan sells liquor at wholesale in the counties of Lake and McHenry. The defendant Somerset Importers, Ltd., is a Delaware Corporation that has its principal place of business in the city of New York. It is a subsidiary of Norton Simon, Inc., and is primarily engaged in the business of importing alcoholic beverages and selling them to wholesalers.

For about 35 years prior to February 18, 1976, Continental has been a wholesale distributor of the Johnnie Walker scotch whiskeys for Somerset and its corporate predecessors in the Chicago metropolitan area. The other plaintiffs have maintained a similar relation for some 10 to 15 years. Continental has had one competitor, Capitol Wine & Liquor Company, another distributor that has wholesaled Somerset's lines of alcoholic beverages in Cook and DuPage counties. During the period 1972 to 1975, Capitol, though a smaller company, sold more of Somerset's brands than did Continental or the other plaintiffs. In 1975, Continental's sales of Somerset brands were in excess of 3.5 million dollars, sales that constituted approximately 5 to 7% of its total for that year.

Continental's, and the other plaintiffs' distributorship agreements with Somerset have been in writing, for several years; and each has contained a provision for termination on 30 days notice. Throughout their distributorships for Somerset and its predecessor corporations, plaintiffs have not received any complaint or criticism about their sales performance, their compliance with the agreements, or concerning their credit or general financial condition. In fact, Somerset's evaluations of Continental have always been favorable. These evaluations, and those concerning Capitol, show that by comparison, Continental distributes on a wider geographic area, has a larger warehouse, employs a larger sales organization and has more accounts.

Capitol, however, competed with Continental in the distribution of Somerset's products throughout Cook and DuPage counties. Low retail prices for Somerset's products in the Chicago metropolitan area have resulted from the fierce competition that has characterized the relation of the two companies, and from price cutting by both of them at the wholesale level. The competition between Capitol and Continental, and the price cutting between them, have intensified in the last year. Somerset's Chicago sales supervisor received complaints from retailers about this price cutting. Sidney Friedman, Capitol's executive officer, complained to Somerset about Continental's price-cutting practices, particularly its "Friday Specials."

In the last year before this suit was filed, Friedman of Capitol made comments to representatives of Continental that he could not live with its competition; and that he, through his friendship with Heilmann of Somerset, was going to establish Capitol as the exclusive distributor of Johnnie Walker and Tanqueray alcoholic beverage lines in the Chicago metropolitan area. Friedman

had known Heilmann; Heilmann has had business relations with Friedman since 1972.

On September 24, 1975, Heilmann visited Friedman in Capitol's office in Chicago. In late October or early November, 1975, Murray, Somerset's Chicago representative, in a telephone conversation, recommended to a Somerset executive that Continental be terminated as a Somerset distributor. On February 18, 1976, two Somerset employees delivered to Continental a letter giving it notice that in 30 days the distributorship agreement with it, and those with the other plaintiffs, would be terminated. On the same day, Capitol was notified that it was Somerset's sole distributor in the Chicago area. Plaintiffs immediately filed this suit and have moved for a preliminary injunction to restrain termination of their distributorships with Somerset.

### III.

■ Four witnesses have testified at the hearing of this motion. They were Fred and Abe Cooper, for the plaintiffs; John E. Heilmann and James Sherman Barry for the defendant. In addition, the court has admitted exhibits and has been asked to consider excerpts from five depositions which are said to be admissions binding on the parties. From this evidence it must be determined whether plaintiffs have shown they have a reasonable likelihood of success on the merits; that they will be irreparably injured unless the injunction issues; and that the balance of hardships tips in their favor. *Pure Food Products, Inc. v. American Bakeries Company*, 356 F.Supp. 701 (N.D.Ill.1973); compare *McCrerry Angus Farms v. American Angus Association*, 379 F.Supp. 1008 (N.D.Ill.1974), affirmed 7 Cir., 506 F.2d 1404.

■ Turning to the likelihood that plaintiffs will succeed on the merits, a showing has been made that when the case is heard, it may be proved that Somerset's decision to terminate plaintiffs' distributorship agreements was done in concert with representatives of Capitol and for the pur-pose of fixing and stabilizing the retail prices of Somerset's lines of alcoholic beverages in the Chicago metropolitan area. A showing has been made that at the hearing of this cause on the merits, evidence may prove the objective of Somerset and Capitol in eliminating Continental as a distributor of Somerset's brands had an anti-competitive purpose. It is true, as Somerset argues, that a liquor distributorship can be terminated for compelling business considerations. See *Joseph E. Seagram & Sons, Inc. v. Hawaiian Oke & Liquors Ltd.*, 416 F.2d 71 (9 Cir. 1969), certiorari denied 396 U.S. 1062, 90 S.Ct. 752, 24 L.Ed.2d 755 (1970); *Ace Beer Distributors, Inc. v. Kohn, Inc.*, 318 F.2d 283 (6 Cir. 1963), certiorari denied 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 166. However, it is equally true that while a supplier may terminate a distributor for business reasons, it cannot do so if the termination results in a violation of federal anti-trust laws. *United States v. Parke, Davis & Co.*, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); *Ricchetti v. Meister Brau, Inc.*, 431 F. 1211 (9 Cir. 1970). It has been held that the termination of a distributorship in order to eliminate a price-cutting dealer has such a result. See *Klor's v. Broadway-Hale Stores*, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1958). Therefore, in a liquor distributorship case like this one, it will be important to consider, at the trial on the merits, whether there was an anticompetitive motive behind Somerset's terminations of the distributorships here involved; and whether these terminations had an anti-competitive effect on the relevant market. Compare *United States v. Arnold, Schwinn & Co.*, 388 U.S. 365, 87 S.Ct. 1856, 18 L.Ed.2d 1249 (1967).

■ Section 1 of the Sherman Act provides, in its relevant part, that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal * * *." 15 U.S.C.A. § 1. Whether, in fact and law, there was a conspiracy or combination between Somerset and Capitol to eliminate plaintiffs as price

cutting distributor-competitors, and thereby stabilized the retail prices of Somerset's brands of alcoholic beverages, will have to await resolution of this cause on the merits. But on the evidence this court has heard, a reasonable likelihood has been shown that plaintiffs may prove a conspiracy or combination in restraint of interstate trade or commerce. See *Albrecht v. Harold Co.*, 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1967); compare *Sahm v. V–1 Oil Co.*, 402 F.2d 69 (10 Cir. 1968). Ordinarily, secrecy and concealment are essential features of a successful conspiracy. For this reason, it may not be possible, in the hearing of an emergency motion for preliminary injunction, to prove participation in a criminal conspiracy by direct evidence. A common purpose and plan may be inferred from a development and a collocation of circumstances. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1941); *Blumenthal v. United States*, 332 U.S. 539, 557, 68 S.Ct. 248, 256, 92 L.Ed. 154, 168 (1947).

■ In this case, witnesses for Somerset have testified that the decision to terminate Continental as one of its distributors in the Chicago metropolitan area was made unilaterally, without knowledge or participation by any representative of Capitol. In other words, Somerset terminated a distributorship that sold $5 million of its alcoholic beverages annually and appointed a successor without prior discussion or consultation concerning the responsibilities entailed. It is the opinion of this court that in the trial of this cause, there is a reasonable likelihood of plaintiffs proving this was not so; and that the decision to appoint Capitol as Somerset's sole distributor in the Chicago metropolitan area was reached as the result of a concert of action between representatives of the two companies. Compare *United States v. Zuideveld*, 316 F.2d 873 (7 Cir. 1963); compare *Connolly v. Gishwiller*, 162 F.2d 428 (7 Cir. 1947); *Rohlfing v. Cat's Paw Rubber Co., Inc.*, 17 F.R.D. 426 (N.D. Ill.1954).

With regard to plaintiffs' irreparable injury unless they are granted temporary injunctive relief, it is the judgment of this court that an adequate showing of this possibility has been made. In 1975, the immediately preceding year, Continental's sales of Somerset's brands exceeded 3.5 million dollars. These sales constituted approximately 5 to 7% of the company's total for that year. What is more important, however, is the fact that Johnnie Walker scotch whiskeys, the most important line of the Somerset brands, is known in the wholesale liquor industry as a "door opener" to retail accounts, and among retailers as a "call item" by consumers of alcoholic beverages. Although, as Somerset argues, the loss to Continental of a known portion of its gross sales can be calculated, there are other factors in the loss of Somerset brands which must be considered. These are the relation between the Johnnie Walker lines and the effect of their loss on Continental's gross annual sales which are not as susceptible to calculation as is the value of profits it may make in distributing the alcoholic beverages supplied by Somerset. Therefore, this court is of the opinion that plaintiffs have made a showing of irreparable injury resulting from the termination of their Somerset distributorships. See *Supermarket Services, Inc. v. Hartz Mountain Corp.*, 382 F.Supp. 1248 (S.D.N.Y. 1974); compare *Beaute Craft Supply Co. v. Revlon, Inc.*, 402 F.Supp. 385 (D.C.Mich. 1975).

Finally, it is the court's conclusion that plaintiffs have shown the balance of hardships in their relation with Somerset tips in their favor. See *Milsen v. Southland Corporation*, 454 F.2d 363 (7 Cir. 1971); compare *Lepore v. New York News Inc.*, 346 F.Supp. 755 (S.D.N.Y.1972). Continental has been a distributor of Somerset brands for more than 35 years. The other plaintiffs have been similarly involved for some 10 to 15 years. They are all financially responsible; they have always discharged the commercial and contractual obligations of their distributorships. Loss to them of the Somerset brands of alcoholic beverages will cause plaintiffs an immediate and perhaps incalculable injury. In contrast, other

than an interference with the consolidation of its distributors, maintenance of the status quo between the parties will not affect Somerset in any way. For these reasons, the motion for a preliminary injunction should be granted, without bond. Accordingly, an appropriate order may be tendered for entry consistent with the views expressed in this memorandum.