**In re DISCIPLINE OF James A. ASHTON, a Member of the Bar of the United States District Court For the Western District of Pennsylvania.**

**Appeal of James A. ASHTON.**

**No. 84–3680.**

United States Court of Appeals, Third Circuit.

Argued April 29, 1985.

Decided July 16, 1985.

Rehearing Denied Aug. 21, 1985.

Rehearing and Rehearing In Banc Denied Aug. 21, 1985.

John Rogers Carroll (argued), Carroll & Carroll, Philadelphia, Pa., for appellant.

Paul J. Brysh (argued), J. Alan Johnson, U.S. Atty., Pittsburgh, Pa., for U.S. Dist. Court.

Robert O. Lampl, Pittsburgh, Pa., for appellant.

Before GIBBONS and HIGGIN-BOTHAM, Circuit Judges and NEWCOM-ER, District Judge.*

## OPINION OF THE COURT

GIBBONS, Circuit Judge:

James A. Ashton, a member of the Bar of the Commonwealth of Pennsylvania, appeals from an order of the United States District Court for the Western District of Pennsylvania, dated September 19, 1984, denying his petition for readmission to the Bar of that court. That order was entered following a remand from this court in Ash-

ton's appeal from a prior order of the district court, dated May 2, 1983, denying his application for readmission.

On December 30, 1974, Ashton was convicted in the district court of two counts of mail fraud in violation of 18 U.S.C. § 1341 (1982). That conviction resulted in Ashton's suspension from the Pennsylvania Bar by the Supreme Court of the Commonwealth. The district court subsequently discovered that Ashton had never been properly admitted to the Bar of the district court and could not technically be disbarred. Ashton served time in a federal penitentiary and paid a fine. Thereafter he enrolled in Alcoholics Anonymous and, after a lengthy period of rehabilitation, applied for readmission to the Pennsylvania Bar. The Disciplinary Board of the Supreme Court held a two-day hearing at which evidence of Ashton's present good character and of the effects of alcoholism was presented. The Disciplinary Board recommended to the Supreme Court that Ashton be readmitted because of his good conduct while suspended and his recovery from alcohol abuse. On October 16, 1982 the Supreme Court voted 5 to 2 to reinstate him to the Pennsylvania Bar.

After his readmission to the Pennsylvania Bar, on January 17, 1983, Ashton applied for admission to the district court. Under Local Rule 1 of the Western District of Pennsylvania, applicants who have been admitted to practice before the Supreme Court of Pennsylvania are eligible for admission to the Bar of the district court. The rule provides, however, that the applicant "shall, if required, offer satisfactory evidence of his moral and professional character...." Local Rule 1(d). The Board of Judges of the District Court, on January 18, 1983, decided to appoint an ad hoc panel to consider Ashton's application for admission and make a recommendation to the full court. That ad hoc panel examined the report submitted by the Pennsylvania Disciplinary Board to the Supreme Court of Pennsylvania and the 433 page

---

* Hon. Clarence C. Newcomer, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

transcript of proceedings before that Board.

On February 24, 1983 the ad hoc panel filed a report to the full court concluding that the Pennsylvania reinstatement hearing "did not establish that Ashton is of good moral and professional character," and recommending that his application for admission be denied. The report notes that Ashton had never been admitted to the district court before, although he had practiced before it.[1] The fact that he had practiced before the district court at some time before his mail fraud conviction was not relied upon by the ad hoc panel as bearing upon his present good character. Referring, instead, to the state proceedings, the ad hoc panel acknowledged that sixteen witnesses "all testified to Ashton's transformation since his recovery from alcoholism." A. 644. The panel criticized the Board's report, however, because "[t]here was no development of other matters concerning the reputation of Ashton among the members of the bench and bar, including his poor representation of clients,"[2] and because there was no "reference at the reinstatement hearing to the reputation of Ashton for asserting to certain people that he could influence the actions of certain judges both in state and federal courts by the payment of money." *Id.* The report criticized counsel for the Disciplinary Office for failing to "bring any other complaints about Ashton's conduct to the attention of the hearing panel." *Id.* The report noted that "complaints were received by the Bar Association [not otherwise identified] that insufficient notice of the reinstatement hearing had been given." A. 645. It noted, further, that the panel was "aware of a strong adverse reaction to the readmission of Ashton among members of the legal profession in the Pittsburgh area." *Id.* The reasons for that reaction and the identity of the members of the

legal profession who registered it are undisclosed. Finally, the panel report stated:

Last, we note that Ashton recently took an active role in publicizing a newsworthy case when it was filed with this court. The implication of the publicity was that he was one of the attorneys for the plaintiffs in that case.

*Id.*

Neither before the state Disciplinary Board, nor in the district court prior to the filing of the ad hoc panel's report, was Ashton given any notice that he would have to do more for admission than present satisfactory evidence of present good character. He was not on notice that the district court would take into consideration adverse reactions to his readmission to the Pennsylvania Bar by unnamed members of the legal profession, or that it would take into account press accounts about a "newsworthy case" in which he was named in some capacity. Nor was he on notice that the district court might take into account a criticism of the manner in which he had represented a client prior to his mail fraud conviction.

Although the ad hoc panel recommended denial of the application on the basis outlined above, on March 17, 1983 the Chief Judge of the district court entered an order directing the panel to conduct a hearing. The hearing was held on April 6, 1983. Since the panel members had previously read the transcript of proceedings before the Disciplinary Board of the Supreme Court, and the Board's report to the Supreme Court, Ashton was directed not to duplicate any materials presented to the Disciplinary Board. He was permitted, however, to offer the testimony of additional witnesses. No counsel was appointed to oppose Ashton's application, and no charges of any kind were made against him prior to the hearing. Thus Ashton was on notice at the hearing of no more than his

---

1. This is disputed by Ashton, who claims he once possessed a certificate attesting to his admission. *See* Appellant's Br. at 40.

2. The report of the ad hoc panel made reference to a reported decision of this court, *Shuber v.*

*S.S. Kresge Company,* 458 F.2d 1058, 1061–62 (3d Cir.1972) referring to Ashton's lax prosecution of a civil case in failing to move to amend a pretrial order.

obligation, under Local Rule 1(d), to "offer satisfactory evidence of his moral and professional character...." He was informed at the outset of the hearing that the ad hoc panel would act as a special prosecutor performing an investigative function. Ashton testified on his own behalf and presented the testimony of thirteen witnesses in addition to those who had testified before the Disciplinary Board. Members of the ad hoc panel cross-examined Ashton and the witnesses presented on his behalf, and called no other witnesses.

During the course of cross-examination of witness Allan R. Patterson, a member of the panel asked if Patterson knew anything in connection with Ashton's use in the 1950's of the stationery and office of Common Pleas Court Judge Weiss to run his own collection agency. The witness had no knowledge of the subject. A. 43.

During the course of cross-examination of witness Lester Nauhaus, a member of the panel asked Nauhaus whether he knew anything about Ashton holding out that he had certain judges that were susceptible of being paid. Nauhaus responded:

A. I have heard that about half the members of the criminal bar; I don't believe any of them.

Q. About half the members of the criminal bar. But did you hear specific judges named?

A. About Mr. Ashton, no.

A. 56–57.

A member of the panel asked witness Stephen I. Richman whether Ashton's work for him doing investigation and legal research violated the terms of Ashton's probation. Richman responded: "I can't say that as a legal conclusion...." He acknowledged, however, that when a judge of the district court complained of the activity Ashton withdrew from it. A. 62.

A member of the panel asked witness Helen Lampl:

Q. Did you ever hear of a rather strange event happening at a closing where he was selling some of his own property?

She replied that she had not. A. 78–79. Witness John L. Doherty acknowledged on cross-examination by a panel member that he had heard that during the period when Ashton was suffering from alcoholism he "allegedly told a criminal client that he could do something with a federal judge." A. 87. Doherty was also asked:

Q. Were you ever aware of any event where he actually threatened the life of a judge of this court?

He responded that he never heard such talk. A. 87–88. Doherty acknowledged that he had heard talk to the effect that Ashton produced an imposter to sign a deed at a closing, but Doherty had no personal knowledge of such an event. A. 88–89.

Witness Joseph J. Bernstein testified on cross-examination that when he was serving as a trustee in bankruptcy, Mr. Ashton brought some papers relating to that federal bankruptcy proceeding to Bernstein's office. Bernstein also testified that he had never seen Ashton in the federal court. A. 94–95.

Robert O. Lampl, an attorney, explained the incident to which Mr. Bernstein referred. Bernstein, as trustee, hosted a meeting of about ten people, including Lampl who represented a creditor. Ashton, readmitted to practice in Pennsylvania, was associated in some manner with Lampl. He accompanied Lampl to the meeting, and later took some documents to Bernstein's office as a follow through. A. 102.

Before Ashton testified a member of the panel indicated concern about reports, the source of which was not disclosed, that Ashton did work contrary to the terms of his probation, and that he did work in the district court although he never had been admitted to that court. A. 109. The panel member indicated that at the time of Ashton's mail fraud conviction no record could be found that he had been admitted, but observed: "Of course, we had a rather loose practice with that." A. 110. The panel member also referred to newspaper

publicity connecting Ashton with the Volkswagen discrimination case. A. 111.

Ashton explained that while he was on probation he had a discussion with a law firm in Washington, Pennsylvania about doing investigative work. Stephen I. Richman, Esq., was aware of the conditions of probation, but thought that Judge Marsh would approve Ashton's engaging in work as an investigator and prepared a petition requesting such approval. For several days, while the petition was pending, Ashton had discussions with Richman about several cases. When Judge Marsh denied the petition the work ceased. It was not resumed until after the expiration of Ashton's probation. A. 112.

Ashton also explained his attendance at the creditors' meeting in Mr. Bernstein's office. He went as a guest of Mr. Lampl, intending to observe and learn about changes in the bankruptcy law. Ashton conceded that his attendance, even as an observer, may have been an error of judgment. A. 113. He acted simply as a messenger in delivering papers to Mr. Bernstein. He has no bankruptcy clients. A. 114.

As to the Volkswagen case, Ashton explained that after he was readmitted to the Pennsylvania Bar he was asked by a black man, Nate Smith, to handle a labor case at the Volkswagen plant in New Stanton, Pennsylvania. He handled the case before the Pennsylvania Human Relations Commission, where he was entitled to practice. When it appeared necessary to file a Title VII lawsuit in the federal court he referred the matter to Mr. Lampl, but continued to handle matters pending in the Pennsylvania Human Relations Commission. When the Title VII case was filed, he accompanied Mr. Lampl or Mr. Henderson to court on one occasion, on which Judge Diamond told him he could act as an advisor in the case. Nevertheless, following publicity about his participation in the case, he withdrew from any participation in the Title VII proceeding. A. 115–16.

Responding to a suggestion by a panel member about rumors from unidentified sources that he was "running cases to either Mr. Shorall or Mr. Lampl," Ashton unequivocally denied the truth of any such rumors. A. 116. Ashton volunteered to take a polygraph test as to the truthfulness of that denial. The panel members indicated, however: "We'll take that answer." A. 118.

Responding to the inquiry made to witness Doherty about a threat to a judge, Ashton explained that after a client whom he represented was sentenced to prison Judge Willson received a death threat. An F.B.I. agent interviewed Ashton about it; Ashton denied any knowledge of the threat and showed the agent evidence that he had been on an airplane flight at the time the threat was made. That was the end of the matter. Ashton made no such threat. A. 129–30.

Ashton also addressed the subject of the inquiry to witness Peterson about the thirty-year old rumor that he had operated a collection agency out of the office of a Common Pleas Judge. He explained that while serving as an unpaid law clerk he listed on his letterhead the telephone number of the Judge's chambers. A. 132–33. He denied operating a collection agency or practicing law in the judge's office.

Responding to the inquiry made to witness Nauhaus about having represented that certain judges were susceptible of being paid, he acknowledged that when he was drinking heavily a client initiated a discussion with him about the possibility of assuring a noncustodial sentence by paying $25,000 to a judge. The same client discussed that possibility with an F.B.I. undercover agent, and a grand jury investigation resulted. Ashton submitted an affidavit to the grand jury. Ashton conceded that his reaction to the client's suggestion was less than exemplary. He denied that he ever represented that he could fix a judge in the district court or any other court. A. 138–39.

The transcript of the hearing also discloses that the panel member who was most active in cross-examining witnesses offered by Mr. Ashton with respect to ru-

mors about him had no intention of relying on the findings of what he referred to as "that farce of a state disciplinary hearing." A. 150. That panel member observed: "The Disciplinary Board's proceedings as I have understood them and as I saw them here in this record (indicating), are a joke, an obscene joke." A. 153.

After testimony was concluded Ashton's counsel advanced the legal argument that it was not proper to confront him for the first time at this hearing with rumors based on hearsay, and expect him to meet them in the hearing. A. 155–56. Throughout the argument the panel member who expressed strong dissatisfaction with the state Disciplinary Board proceedings indicated that the rumors (about which no one testified) bore on Ashton's reputation. Ashton's counsel attempted, with little success, to convince the panel that the relevant inquiry, under Local Rule 1(d), was Ashton's present "moral and professional character." The transcript contains numerous indications that one panel member found more relevant an anticipated adverse public reaction to Ashton's readmission. Two panel members acknowledged, however, that under the governing legal standard of *In re Dreier*, 258 F.2d 68 (3d Cir. 1958), the district court should not deny admission to an attorney who has been readmitted to the state Bar unless the district court finds that the attorney is not presently of good moral and professional character. A. 163–65.

The transcript of testimony before the state Disciplinary Board and the transcript of testimony of the witnesses who testified before the ad hoc panel establishes not merely a prima facie case, but a rather strong case that Ashton, since joining Alcoholics Anonymous, has ceased alcohol abuse, and has become a person of good moral and professional character.

The ad hoc panel filed a report to the full court on April 19, 1983. Aside from a listing of witnesses, the entire report states:

> Some of the witnesses testified that they had known Mr. Ashton for a long time, felt that his problems were caused by alcoholism, but that he is now reformed and is capable of practicing law. Several, such as Attorney Dixon, had known him a relatively short time. Few were familiar with the details of the reports of misconduct attributed to him.
>
> When Mr. Ashton testified, the panel examined him closely with respect to alleged ethical and criminal violations which had not been discussed or brought to the attention of the State Disciplinary Commission when it considered Mr. Ashton's Application for Readmission to the Pennsylvania Bar. We cannot follow the State Board's recommendation because of the non-adversary nature of those proceedings. Mr. Ashton's conduct since his readmission to the state bar leads us to believe that a longer period of evaluation is needed.
>
> It is our unanimous recommendation that Mr. Ashton's Application for Readmission be denied without prejudice to reapply for admission to the bar of this court in two years.

A. 646. The recommendation was adopted by the full court, with no further discussion.

Ashton appealed. This court remanded for further proceedings. Citing *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) and *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238–39, 77 S.Ct. 752, 755–56, 1 L.Ed.2d 796 (1957), we said:

> Based upon the record, we are unable to determine whether the district court's refusal to admit Ashton comports with the requirements of due process set forth by the Supreme Court.

A. 637–38.

Following the remand, the district court filed an en banc memorandum order which states in relevant part:

> Contrary to the impression of the Court of Appeals, the panel did not summarily conclude that Ashton had not established his fitness. It submitted its findings and conclusions to the Board of Judges which considered them in a meeting and made its decision.

Because there is no established procedure for such a situation this court designated a panel to conduct a hearing. No charges were made against Ashton; it was his burden to demonstrate to the court his fitness to become a member of the bar of this court in the light of his prior criminal conviction in this court of a felony arising out of his law practice and prior complaints about his professional behavior that had come to the attention of members of the court. Ashton presented character witnesses who in a large part knew little about his involvement in these activities. It was necessary for the panel to inquire of these character witnesses the extent of their knowledge of the complaints, charges, rumors and other matters, particularly in view of the fact that the Pennsylvania Disciplinary Board had produced no evidence about other complaints against Ashton, nor brought any such matters to the attention of the Disciplinary Board Panel. It was the inadequacy of the Disciplinary Board's record that required the members of the panel of judges of this court to question the character witnesses about their knowledge of these matters.

It also came to the attention of the Board of Judges of this court that Ashton, after his reinstatement in the state courts, was involving himself as an attorney with cases being filed in this court, including bankruptcy proceedings without being admitted. This was a repetition of his prior conduct when he practiced in this court for years without ever having been admitted.

The decision not to grant Ashton's application was the decision of the entire Board of Judges and not that of the panel. Many of these members had been members of the court during the time Ashton practiced before this court without being admitted and were aware of complaints against him never raised by the Disciplinary Board, and of which

most of his character witnesses were unaware. A. 641–42.

The district court's memorandum discloses: (1) that the judges acted on the basis of complaints about Ashton's conduct prior to the time of his conviction of mail fraud, of which he was not apprised before the hearing, and to which he had no opportunity to respond; (2) that those complaints, true or false, did not bear upon Ashton's present moral and professional character; and (3) that the only reference to incidents of alleged misconduct during the relevant time period is the reference to Ashton's "involving himself as an attorney with cases being filed in this court, including bankruptcy proceedings without being admitted." This is the only statement of the district court's order that even arguably complies with this Court's mandate that Ashton not be denied membership in the Bar in the absence of clearly articulated valid reasons for the denial. A. 637–38.

If the quoted statement is intended as a finding of fact that in the relevant time period Ashton practiced law in the United States District Court in violation of that court's rules on admission, the finding is completely without support. The full district court did not conduct a hearing, relying instead on the findings of the three-judge panel. Rule 53, dealing with the use of masters, provides the closest analogy to the unique procedure which was followed in this case. Fed.R.Civ.P. 53.[3] The application for admission is a non-jury action. Rule 53(e)(2) provides that "[i]n an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous." The ad hoc panel made no finding that Ashton had practiced law in the district court in violation of its rules. Thus Ashton was never put on notice of any obligation to file objections to the report in that respect. Moreover, had such a finding been made by the ad hoc panel it would on this record be clearly erroneous.

---

**3.** The district court memorandum following remand describes the April 19, 1983 report of the ad hoc panel as a "report and recommendation." A. 640.

The only *evidence* concerning either the bankruptcy incident or the Volkswagen Title VII case will not support an inference that Ashton, with respect to either matter, practiced law in the district court in violation of its rules. Attending a meeting of creditors in the office of a trustee in bankruptcy is not practicing law in the district court. Attending a hearing in a Title VII case being conducted by an attorney to whom that case has been referred is not practicing law in the district court.

The district court requires applicants to its Bar to offer satisfactory evidence of their good moral and professional character. Local Rule 1(d). Since that is the standard which the court adopted by rule, we need not consider whether, had some more stringent standard been adopted, it would conflict with *Matter of Abrams*, 521 F.2d 1094 (3d Cir.1975). Applying the standard of Local Rule 1(d), on this record, Ashton established a prima facie case of present good character. The only relevant reason advanced by the district court for concluding that he is not entitled to admission to the Bar is a reason on which the ad hoc panel made no finding, and which is in any event not supported by the record evidence. That being the case, there is no rational basis for the district court's order denying Ashton's application for admission. This alone is ground for reversal, and it is not necessary to address Ashton's further contentions that the procedures adopted by the ad hoc panel are inconsistent with the due process requirements of *In re Ruffalo*, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968).

The order appealed from will be reversed and the district court will be directed to grant Ashton's motion for admission to its Bar.