RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0431P (6th Cir.)
File Name: 03a0431p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————

BOWLING TRANSPORTATION,
INC.,

    *Petitioner/*
*Cross-Respondent,*

    *v.*

NATIONAL LABOR RELATIONS
BOARD,

    *Respondent/*
*Cross-Petitioner.*

Nos. 01-2386/2588

On Petition for Review and Cross-Application
for Enforcement of an Order of the
National Labor Relations Board.
No. 25-CA-26896.

Argued: June 20, 2003

Decided and Filed: December 8, 2003

Before: BOGGS, Chief Judge; GILMAN, Circuit Judge;
DOWD, District Judge.[*]

———————

[*] The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

———————

**COUNSEL**

**ARGUED:** Konrad Kuczak, Dayton, Ohio, for Petitioner. Christopher W. Young, NATIONAL LABOR RELATIONS BOARD, APPELLATE COURT BRANCH, Washington, D.C., for Respondent. **ON BRIEF:** Konrad Kuczak, Dayton, Ohio, for Petitioner. Christopher W. Young, Aileen A. Armstrong, Frederick C. Havard, NATIONAL LABOR RELATIONS BOARD, APPELLATE COURT BRANCH, Washington, D.C., for Respondent.

    DOWD, D. J., delivered the opinion of the court, in which GILMAN, J., joined. BOGGS, C. J. (pp. 21-22), delivered a separate opinion concurring in part and dissenting in part.

———————

**OPINION**

———————

    DOWD, District Judge. The above-captioned appeal revolves around Petitioner/Cross-Respondent's statements to and discharge of three of its employees in 1999. The Administrative Law Judge ruled against the Petitioner/Cross-Respondent. A three-member panel of the National Labor Relations Board affirmed with only slight modifications to the ALJ's order. Petitioner/Cross-Respondent seeks an entry from this Court vacating the Board's decision; Respondent/Cross-Petitioner seeks an entry from this Court enforcing the Board's decision.

This Court has jurisdiction pursuant to 29 U.S.C. § 160(e), (f) (1984).[1] For the reasons stated herein, we AFFIRM.

## I. Background

This case presents an unusual set of facts in that the three employees for whom the Respondent/Cross-Petitioner General Counsel of the National Labor Relations Board ("General Counsel") brought this action did not actually intend to form a union. Nevertheless, the General Counsel brought this action against the Petitioner/Cross-Respondent Bowling Transportation, Inc. ("Bowling"), for violating Bowling's employees' right to engage in protected concerted activity[2]. On the surface, it appears that two of Bowling's employees, Richard Ashby and Kenneth Hanks, were merely complaining about a safety incentive program. Jeffrey Horton, the third employee at issue, was simply bringing to the attention of Bowling management what may be considered no more than a simple grievance about work rules.

---

[1] As to the Petitioner/Cross-Respondent's appeal, jurisdiction is premised upon 29 U.S.C. § 160(f), which states in relevant part: "Any person aggrieved by a final order of the Board ... may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business." As to the Respondent/Cross-Petitioner's application for enforcement of the National Labor Relation Board's final order, jurisdiction is based on 29 U.S.C. § 160(e), which states in relevant part: "The Board shall have power to petition any court of appeals of the United States ... within any circuit ... wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order."

[2] "Protected concerted activity" is a term (or phrase) of art that appears often in the record and this opinion. A protected concerted activity is one of those activities protected by section 7 of the National Labor Relations Act, 29 U.S.C. § 157 (1998). *See NLRB v. Main Street Terrace Care Ctr.*, 218 F.3d 531, 540 (6th Cir. 2000).

These employees' conduct may not immediately strike the casual observer as unionizing or any other kind of protected activity. Moreover, given the fact that Bowling faced losing its only customer if it did not terminate the three employees, it hardly appears illegal that Bowling did, in fact, terminate the three employees. Despite these appearances, however, the facts brought to light in this section, the standard of review in the following section, *infra* Part II, and the analysis, *infra* Part III, show that Bowling violated the National Labor Relations Act ("NLRA"), requiring an affirmance of the decision by the Board.

### A. *Facts*

Bowling, whose office and place of business is in Owensboro, Kentucky, provides transportation services for steel producers. One such producer is AK Steel Company ("AK Steel"), who was Bowling's only customer in 1999.[3] AK Steel maintained several plants in a number of states, supplying steel to the "Big Three" automobile manufacturers. AK Steel contracted out some of its operations to other firms. Bowling provided transportation, or carrier, services, which involved hauling steel coils within and between AK Steel's four or five facilities, and offsite to AK Steel's customers.

Among Bowling's key players in this litigation are: Bill Bowling, president and chief executive officer; Paul Brewer, safety and maintenance supervisor; and Lawrence Martin, terminal manager for Bowling at AK Steel's Rockport, Kentucky[4], facility. Bowling's treatment of three former

---

[3] Bowling's president's testimony revealed that its subsequent customers included Bethlehem, USX, Inland, and LTV. (Admin. Hr'g Tr. at 14 (J.A. at 158-59).)

[4] An ambiguity appears in the record, where ALJ Kocol indicates in one place of his opinion that Rockport is in Indiana and just a few paragraphs later that Rockport is in Kentucky (J.A. at 33). Also notable

employees, Richard Ashby, Kenneth Hanks, and Jeffrey Horton, who all worked at the Rockport AK Steel site, is what prompted the General Counsel to file this action. Ashby and Hanks worked as "supertruck" drivers, operating heavy duty and "tow motor" vehicles. Both Ashby and Hanks performed their work on AK Steel property. Horton also operated tow motor vehicles and drove trucks principally on AK Steel property. Bowling discharged these three employees in December 1999.

The events that the General Counsel alleges led to Ashby's and Hanks's discharges occurred shortly before their respective terminations, when AK Steel offered its contractors, including Bowling, a per-employee bonus of up to one dollar for each injury-free hour worked. The objective of this bonus was to improve safety at AK Steel sites, thereby (presumably) avoiding liability exposure. AK Steel "strongly encouraged" its contractors to pass the bonus on to their employees. (J.A. at 417.) Bowling instead paid only fifty cents of each bonus dollar to its employees,[5] some of whom felt entitled to the full amount. Ashby was one such employee. He discussed this matter with his co-workers at the AK Steel plant, including Hanks, who shared his discontent with Bowling keeping half of the bonus. Ashby also voiced his concerns to Brewer.

On December 9, 1999, Ashby decided to take his concerns to AK Steel. On his way to see Brian K. Rydberg, AK Steel's

---

is that the ALJ's opinion attached to the NLRB's affirmance is not an accurate reproduction of the full-length opinion signed by ALJ Kocol (J.A. 5-21) with respect to the identification of the state in which Rockport is located. A quick search on the internet revealed that a Rockport town exists in both Indiana and Kentucky. In any event, the ambiguity does not affect the decision we reach.

[5]Bowling used the portion it kept to pay for the company Christmas party that year and to purchase safety gear, including boots and helmets.

manager of transportation and materials in the Rockport, Kentucky, facility, Ashby encountered Hanks and told him that he was off to give Rydberg "some hell." Hanks tagged along. Upon their arrival at Rydberg's office, they asked to speak to him and Rydberg invited the two Bowling employees into his office. There, Ashby expressed his dissatisfaction with Bowling's handling of the safety bonus. After about a ten to fifteen minute discussion, Rydberg indicated that Bowling's handling of the bonus was not his concern and referred them to Glen Easterling, another AK Steel employee. Hanks and Ashby exited Rydberg's office.

Subsequently, Rydberg contacted Martin to tell him about his encounter with Ashby and Hanks. Rydberg explained that AK Steel management should not be the one entertaining complaints about such matters. Rydberg instructed Martin to remove Ashby and Hanks from the premises. In response, Bowling issued a notice to its employees, prohibiting them from contacting any AK Steel employee without prior permission and warning that failure to comply with the prohibition would result in discipline or termination.

Bowling also decided to terminate Ashby and Hanks. On December 19, 1999, Martin and a security guard escorted Ashby, and later Hanks, off the AK Steel site. Martin accused Ashby of attempting to unionize based on the earlier discussion with Rydberg. Ashby denied the accusation, to which Martin responded that an investigation would be initiated. Thereafter, Martin advised Ashby to draft a letter explaining why he was talking to Rydberg. Ashby followed the advice and put together the following typewritten statement:

> Approximately one week ago[,] I went to Bryon [sic] Rydberg[']s office and Kenny Hanks followed me. Once in [Brian's] office[,] I ask[ed] him if he knew anthing [sic] about the safty [sic] bonus[.] He said he did not[.] I went on to tell him that I ... heard that we where [sic]

getting one dollar an hour and that Bowling was taking fifty cents of it for boots, hard hats, and glasses. I then told him I was informed that our boots where [sic] to last one year and showed him the soles of my boots and [sic] told wim [sic] I had only been working for Bowling for approximatly [sic] four and a half months. He then informed me that he knew nothing about any of it. He then said that these problems where [sic] between Bowling and me, and that he or A.K.Steel [sic] had an thing [sic] to do with it. At that time[,] me and Kenny left [Brian's] office.

Me and Kenny where [sic] in Byron's office for approximatly [sic] five to ten minutes. If I caused any problems[,] I apologize but I was trying to get an answer, but at no time was me or Kenny thinking about[,] let alone trymng [sic][,] toform [sic] a union.

(Ashby Letter to Martin (J.A. at 409).)

Hanks also put together a statement:

On or around the 8th or 9th of December[,] I took a load to door 722[.] [W]hen I got there[,] Richard [Ashby] was walking towards Brian[']s office. I asked what he was doing, Richard said he was going to give Brian some hell. Not knowing what he was going to ask, I went to the office with him. Richard asked Brian if he had a moment. Brian said yes come on in. Richard and I went in and sat down.

Richard asked who was in charge of the safty [sic] program.

Brian said Glenn Easterling and then asked[,] ["]Why?["] Richard then told him about our safty [sic] [b]onus.

(Hanks Statement (J.A. at 414).)

Although some evidence in the record suggests that Martin made some attempt to keep Ashby and Hanks on the payroll, his efforts were fruitless. Apparently, AK Steel was adamant about keeping the two employees off its premises, and threatened to kick Bowling off the site if they remained. Further, they were not otherwise employable by Bowling because any other job would involve working at an AK Steel site. As such, in late December 1999, Bowling fired both Ashby and Hanks. Their termination notices indicated that they were "[un]able to function on AK Steel property." (Bowling Termination Notices for Ashby and Hanks (J.A. at 412, 415).)

Horton, the third employee for whom this enforcement action was brought, was dissatisfied with some of Bowling's work rules. Horton vocalized his dissatisfaction to co-workers and put together a list of those rules that troubled him. He showed the list to other employees and proposed to show the list to Bill Bowling at the 1999 Christmas party. Horton did as he said he would, presented the list to Bill Bowling, and discussed the matter in Bill Bowling's office. The next day, Horton was suspended, which prompted him to call Bill Bowling. Bill Bowling confirmed to Horton his knowledge of the suspension and expressed a concern that the employees were attempting to unionize under Horton. Despite Horton's denials, Bill Bowling told him that there was not going to be a union because he was the union. A few days later, on December 23, 1999, Martin terminated Horton at the direction of Bill Bowling. His termination notice indicated the reasons for his termination were failure to follow instructions and "employee priorities to [sic] inconsistent with company policy." (Bowling Termination Notice for Horton (J.A. at 407).)

## B. *Procedural Posture*

Administrative Law Judge William G. Kocol began the hearing in this matter on July 31, 2000, and concluded it the next day. In his written decision (J.A. 5-23), ALJ Kocol found that Bowling had violated § 8(a)(1) and (3) of the National Labor Relations Act for, one, telling Ashby and Hanks that they were being removed from AK Steel's property for their protected concerted activity and, two, by discharging Ashby and Hanks for protected concerted activity and for suspected union activity. ALJ Kocol also found that Bowling violated section 8(a)(1) and (3) by threatening Horton with reprisals for unionizing activity and suspected unionizing activity, and for discharging him for both activities. He dismissed as unsupported by the evidence, however, the General Counsel's allegations that Bowling made statements either prohibiting employees from discussing their wages or creating the impression that unionizing activities were under surveillance.

A three-member panel of the Board then re-visited the issues. With only slight modifications to ALJ Kocol's findings, the panel affirmed and adopted his order.[6] Among other things, the final order directed Bowling to cease and desist from violating the NLRA, reinstate the three subject employees, and provide the Board with certain documentation for the purpose of calculating a back pay award. (J.A. at 20-21, 32, 39.) The General Counsel did not take exception to the two dismissals.

Now, Bowling seeks to vacate the NLRB's decision. Simultaneously, the General Counsel seeks to enforce the NLRB's final order. Again, the Court has jurisdiction to hear this case pursuant to 29 U.S.C. § 160(e) and (f).

---

[6] The Board made only non-substantive modifications. (NLRB Decision and Order at 1 n.3, 4 (J.A. at 29).)

## II. STANDARD OF REVIEW

The Board is empowered by Congress to prevent unfair labor practices and to remedy violations of the NLRA. *Kentucky General v. NLRB*, 177 F.3d 430, 435 (6th Cir. 1999). Our scope of review of the Board's findings is limited. *Id.* That is, we review findings of fact and application of law to facts only to determine whether substantial evidence supports them. *Id.* "Substantial evidence" consists of evidence that adequately supports a given conclusion in the mind of a reasonable person. *NLRB v. General Security Services Corp.*, 162 F.3d 437, 441 (6th Cir. 1998). Conflicts in testimony give rise to fact and credibility calls for the Board to resolve. *NLRB v. Aquatech, Inc.*, 926 F.2d 538, 544 (6th Cir. 1991). Given this sort of process, we will not displace the Board's reasonable inferences, even if we may justifiably reach a different conclusion. *Kentucky General*, 177 F.3d at 435. This same level of deference is not required, however, when the Board interprets judicial precedent. Legal conclusions other than interpretations of the NLRA are subject to a *de novo* review. *Albertson's, Inc. v. NLRB*, 301 F.3d 441, 448 (6th Cir. 2002); *Uforma/Shelby Business Forms, Inc. v. NLRB*, 111 F.3d 1284, 1289-90 (6th Cir. 1997).

## III. ANALYSIS

Under the NLRA, "[e]mployees ... have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157 (1998). These activities are commonly known as "protected concerted activities." *See NLRB v. Main St. Terrace Care Ctr.*, 218 F.3d 531, 540 (6th Cir. 2000). Employers may not "interfere with, restrain, or coerce employees in the exercise of the rights protected" in the above section. 29 U.S.C. § 158(a)(1) (1998). "For an

individual's complaints to constitute concerted action, this court requires that the complaints must not have been made solely on behalf of an individual employee, but [they] must be made on behalf of other employees or at least with the object of inducing or preparing for group action." *Main St. Terrace Care Ctr.*, 218 F.3d at 539 (internal quotations marks omitted). "[I]t is not necessary that an employee be appointed by his fellow employees in order to represent their interests." *Id.* Further, employers may not engage in "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3).

Bowling makes three challenges to the NLRB's decision. First, it argues for the first time that the NLRB's decision is unenforceable because AK Steel was an indispensable party, yet absent from the entire proceeding.[7] Second, it contends that the NLRB improperly attributed the unlawful conduct of AK Steel to it in order to arrive at its decision. Lastly, it argues that reinstatement and an award of back pay for the three employees require disinterested, corroborating testimony. The General Counsel simply claims that the NLRB's order was proper and petitions the Court for enforcement of it.

### A. *AK Steel is not an Indispensable Party*

Bowling indicates that AK Steel was never joined as a party and that the General Counsel never alleged, nor did ALJ Kocol find, that Bowling and AK Steel were "joint

---

[7] Notable, however, is that Bowling argued in its exceptions to ALJ Kocol's decision that "AK Steel, a non[-]employer of Ashby and Hanks, cannot violate 'rights' of non-employees." (J.A. at 5.) We view this argument as plainly different from the argument that AK Steel was an indispensable party rendering the NLRB's decision unenforceable.

employers."[8] Bowling says that AK Steel, not Bowling, decided to banish Ashby and Hanks from the site with the threat that all of Bowling's operations would be removed if its directive was ignored. It cites to ALJ Kocol's finding that Bowling could not employ the three in any other aspect of its business because AK Steel was its sole client. Bowling concludes that reinstating the three employees, which would inevitably involve work on AK Steel's property against AK Steel's wishes, was outside of the NLRB's authority. To support this argument, Bowling relies exclusively on *NLRB v. Doug Neal Management Co.*, 620 F.2d 1133 (6th Cir. 1980).

In response, the General Counsel argues that Bowling's failure to raise this argument below operates as a waiver of the issue. He cites a provision of the NLRA, that provides: "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e). The General Counsel indicates that Bowling failed to identify any "extraordinary circumstances" in either its appellate brief or reply brief warranting relief.

In reply, Bowling again calls the Court's attention to *Doug Neal Management* for the proposition that the failure to raise this issue below did not constitute a waiver. Bowling insists that the argument is still viable and that the NLRB's decision is unenforceable. Therefore, it asks this Court to vacate the NLRB's decision.

---

[8] Two or more employers are deemed "joint employers" if they exert significant control over the same employee(s) with respect to key terms and conditions of employment. *Painting Co. v. NLRB*, 298 F.3d 492, 500 (6th Cir. 2002). Joint-employer status allows the conduct of one employer to be attributed to its joint employer. *See, e.g., Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985).

Indeed, this Court plainly stated that the issue of an indispensable party may be addressed even if not raised in the administrative proceedings, and even if the appellate court raises the issue *sua sponte. Doug Neal Mgmt.*, 620 F.2d at 1139. This holding was based, at least in part, on Federal Rule of Civil Procedure 19, which provides for indispensable parties. *Id.* While we acknowledge that at least one circuit court has held that the Federal Rules of Civil Procedure do not apply to administrative proceedings, *Kelly v. U.S. Envtl. Prot. Agency*, 203 F.3d 519, 523 (7th Cir. 2000), we also acknowledge that the decision of one panel of this Court is binding on any subsequent panel, *Dupont Dow Elastomers v. NLRB*, 296 F.3d 495, 506 (6th Cir. 2002); *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985).[9] Thus, although the argument was certainly available for Bowling to make earlier, its failure to do so does not preclude this Court from deciding the issue of whether AK Steel was an indispensable party to the proceedings. Accordingly, we turn to examine it now, but, for the reasons that follow, conclude that AK Steel was *not* an indispensable party.

A party is deemed indispensable under Rule 19 "'only if, in his absence, (1) the absentee is likely to be harmed, (2) one of the parties may be subject to multiple or otherwise inconsistent obligations, or (3) complete relief cannot be accorded to the parties.'" *Doug Neal Mgmt.*, 620 F.2d at 1138 (quoting *Nationwide Auto Transporters v. Morgan Driveway,*

---

[9]Other authority cited by the panel in *Doug Neal Management* includes Moore's Federal Practice, which the Court used for the proposition that "[t]he presence of an indispensable party 'is required in order that the court may make *an adjudication* equitable to all persons involved." *Doug Neal Mgmt.*, 620 F.2d at 1139 (quoting 3A Moore's Federal Practice ¶ 19.05(2)) (emphasis added). Even if the Federal Rules of Civil Procedure do not apply, no rationale exists to distinguish the indispensable party rule in administrative proceedings because the same concerns that serve as the basis for Rule 19 in district court proceedings apply to proceedings before administrative agencies.

*Inc.*, 411 F. Supp. 755, 757 (S.D.N.Y. 1977)). AK Steel does not satisfy these criteria. First, AK Steel is not likely to be harmed by enforcement of the NLRB's order. Nowhere in the final order does the NLRB direct AK Steel to install the three employees in any of its facilities. Rather, the order directs Bowling to offer the three employees "reinstatement to their former jobs or, if those jobs no longer exist, to *substantially equivalent positions*, without prejudice to their seniority or any other rights or privileges previously enjoyed."[10] (Kocol's Decision & Order at 16 (J.A. at 20) (emphasis added).) None of the parties, or AK Steel for that matter, would be subject to multiple or otherwise inconsistent obligations if the order were enforced. Moreover, full relief plainly can be accorded to the parties without AK Steel's involvement. We note that a NLRB proceeding does not serve to adjudicate private rights, but operates as an enforcement of the NLRA to prevent unfair labor practices. *National Licorice Co. v. NLRB*, 309 U.S. 350, 362 (1940); *NLRB v. Hiney Printing Co.*, 733 F.2d 1170, 1171 (6th Cir. 1984). Therefore, the NLRB's order is not unenforceable simply because AK Steel has not, at any time, been part of the proceedings.

---

[10]Perhaps Bowling could have employed the three plaintiffs within its office operations or placed them on paid leave pending litigation against AK Steel for breach of contract, *see infra* Part III.B., or until Bowling expanded its client base. As indicated, *supra* note 3, Bowling's later customers included Bethlehem, USX, Inland, and LTV. In any event, we intentionally omit any definitive discussion of what the phrase "substantially equivalent positions" entails in the context of this case because it is largely irrelevant--the potential hardships faced by a defendant-employer that unlawfully interferes with its employees' protected concerted activity should not dictate whether relief is warranted, whether it be reinstatement or some other form of relief.

### B. *The NLRB Properly Determined that Bowling could not Establish the Wright Line Defense*

*Wright Line*, 251 NLRB 1083 (1980), as adopted by the Supreme Court, allows an employer to establish as an affirmative defense that the subject employee(s) would have been fired regardless of any protected concerted activity. *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 404 (1983), *modified*, *Director, Office of Workers' Comp. Programs, Dept. of Labor, v. Greenwich Collieries*, 512 U.S. 267, 278 (1994); *see also Kamtech, Inc. v. NLRB*, 314 F.3d 800, 811 (6th Cir. 2002); *FiveCAP, Inc. v. NLRB*, 294 F.3d 768, 778 (6th Cir. 2002). In other words, to successfully use the *Wright Line* defense, a company must show some *independent* and lawful[11] basis for a subject employee's termination. Thus, our inquiry is whether the employees still would have been lawfully terminated if the employees never engaged in protected concerted activity.

Bowling argues that it would have fired Ashby, Hanks, and Horton regardless of whether they engaged in protected concerted activity. AK Steel wanted Ashby and Hanks off its premises. As for Horton, Bowling says he would not follow AK Steel's rules regardless of where he was performing his duties. With no other job in which to install any of the three employees, Bowling argues that its only option was to terminate them.

---

[11]That the independent basis must be lawful was not directly at issue in *Wright Line* or *Transportation Management* and its progeny, but is a logical and necessary extension of their holdings. To allow an employer to escape liability by asserting one unlawful motive in place of another unlawful motive would produce absurd results. As pointed out by the Board (NLRB Decision and Order at 3 n.12 (J.A. at 31)), other circuits have indicated the other, independent basis for a termination must be lawful, *see, e.g., Cadbury Beverages, Inc. v. NLRB*, 160 F.3d 24, 29 n.4 (D.C. Cir. 1998); *NLRB v. Joy Recovery Tech. Corp.*, 134 F.3d 1307, 1314 (7th Cir. 1998).

The General Counsel responds that Bowling cannot escape liability for its own, independently unlawful actions against its employees by pointing to AK Steel's "equally unlawfully motivated" decision to bar them from the premises. To accept AK Steel's conduct as a shield for Bowling's wrongdoing would distort the authority for affirmative defenses under *Wright Line*.

We are reluctant to declare that AK Steel's conduct was "unlawfully motivated" because (1) AK Steel was not a party to these proceedings and, as such, could not defend against such an allegation; and (2) the General Counsel never alleged, and neither ALJ Kocol nor the Board found, that Bowling and AK Steel were joint employers. We still find, however, that Bowling could not avail itself of a *Wright Line* defense because its argument for the application of that defense is fatally flawed.

AK Steel's prohibition of Ashby and Hanks from its premises is *not* an *independent* basis for their termination. In fact, it is not properly characterized as a "cause" of anything relevant to the General Counsel's enforcement action. Rather, the prohibition of Ashby and Hanks from the premises is properly and best characterized as an additional *effect* of the employees' protected concerted activity. This becomes immediately apparent when we consider that, if Ashby and Hanks had not spoken to Rydberg (*i.e.*, engaged in protected activity), AK Steel likely would not have forbade Ashby and Hanks from entering its property. In other words, AK Steel's prohibition of Ashby and Hanks does not exist but for the protected concerted activity and, therefore, cannot suffice as an independent basis for the employees' termination.

We also respectfully disagree with the dissent's characterization of Ashby's and Hanks's contact with Rydberg as "obnoxious behavior." They were in fact engaged in concerted activity when they complained about Bowling's

allocation of the safety bonus being paid by AK Steel. Bowling's acquiescence in AK Steel's demand to remove them from the latter's premises for this behavior might or might not have been unlawful, but Bowling's action in discharging them definitely was.

As for Horton, we note that ALJ Kocol and the Board allowed, considered, and rejected Bowling's *Wright Line* defense pertaining to his termination (J.A. at 14, 31-32). Thus, Bowling's concerns about its ability to assert a *Wright Line* defense do not apply to Horton. Further, Bowling does not argue that the Board's decision on the *Wright Line* defense as applied to Horton was unsupported by "substantial evidence."

The fact that Bowling's sole customer at the time was AK Steel and that the ALJ found Ashby, Hanks, and Horton were not employable elsewhere in the company should not operate to render the NLRB's order unenforceable, though these factual aspects do present some practical concerns for enforcement. This principle is reinforced by looking to a more egregious example of discrimination. If instead AK Steel had banished Ashby, Hanks, and Horton from its facilities because they were African-American or because they were women, it would hardly be an appropriate defense for Bowling to follow AK Steel's directive to remove them, even if it were facing complete elimination from the site. Instead, it would have been Bowling's obligation under the civil rights laws to resist AK Steel's influence and perhaps file suit against AK Steel for breach of its contract and/or join its employees in a race discrimination suit against AK Steel, as the employer did in *Lewis v. Haskell Co., Inc.*, 108 F. Supp. 2d 1288 (M.D. Ala. 2000).**[12]**

---

**[12]**Presumably, such an employer facing this situation would have a federal cause of action, too, under 42 U.S.C. § 1981 (1991), which prohibits racial discrimination in the making and enforcement of private

Likewise, in this case, Bowling had an obligation to stand up to AK Steel when it threatened Bowling's ejection if the three employees were not removed. Had AK Steel eliminated Bowling from the site, Bowling certainly could have pursued a breach of contract action against AK Steel and/or filed suit with its employees against AK Steel for violations of the NLRA. To allow subcontractors to mindlessly approve illegal directives is not the intent, purpose, or proper effect of the NLRA, and sets a dangerous precedent for employers to use the "just-following-orders" or "devil-made-me-do-it" defense to unfair labor practices.

### C. *Corroborating Testimony was not Required*

Bowling argues that, contrary to Sixth Circuit precedent, back pay is inappropriate because the General Counsel failed to offer evidence corroborating Ashby, Hanks, and Horton's version of events. The General Counsel argues that Bowling misreads Sixth Circuit authority, suggesting that corroborating testimony is not a strict requirement, particularly when no contradictory evidence is offered.

Bowling's blanket legal proposition is incorrect in view of the relevant authority. "[U]ncorroborated and self-serving statements of a party who stands to benefit from an award of back pay may, *standing alone*, constitute substantial evidence where such testimony is reasonably deemed to be credible and trustworthy, and where it is not undermined by evidence to the contrary." *Sam's Club v. NLRB*, 141 F.3d 653, 658 (6th Cir. 1998) (emphasis added). Furthermore, whether an administrative law judge explains his credibility determinations, as opposed to simply declaring a witness credible, is also a relevant factor in these circumstances.

---

contracts, *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001).

*Health Care & Ret. Corp. of Amer. v. NLRB*, 255 F.3d 276, 282 (6th Cir. 2002).

ALJ Kocol did an impressive job in explaining his credibility determinations. For example, ALJ Kocol observed that "Rydberg's demeanor as a witness left me with the sense that he was more eager to build a case to support the discharge of the employees than merely accurately recount the facts," and that he was "impressed with Ashby's demeanor as a witness." (Kocol's Decision & Order at 3 n.3, 4 n.6 (J.A. at 7-8).) Moreover, ALJ Kocol made a point to credit specific witnesses for various factual recitations. (Kocol's Decision & Order at 3 n.3; 4 n.4-6; 6 n.7; 7 n.8, 10-11 (J.A. at 7-11).) Although Bowling complains that the three employees' testimony was simply self-serving, the only evidence it cites to contradict their testimony is the equally self-serving testimony of Bill Bowling. (Bowling's Appellate Br. at 27.) Bill Bowling's testimony is hardly sufficient to serve as undermining evidence to the contrary. As the Board found, ALJ Kocol cited to substantial evidence to support his conclusions and carefully cited to that evidence throughout his opinion.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the Board's decision and order. Further, since Bowling takes no *other* exceptions to the Board's affirmance,[13] we GRANT the General Counsel's petition for enforcement.

---

[13]Bowling sets forth three narrow issues for determination in this appeal. (Bowling's Appellate Br. at 1-2.) In its reply brief, Bowling even complains that "the Board has attempted to recast the instant Petition for Review as a claim by [Bowling] that the Order of the Board is not supported by substantial evidence." (Bowling's Reply Br. at 1.) Further, Bowling states, "[T]he resolution of the issues which [Bowling] has assigned for review to this Court are exceptions which apply despite 'substantial evidence.'" (Bowling's Reply Br. at 2.) Nevertheless, to the extent that Bowling *may* be advancing, wholly inarticulately, a substantial evidence challenge, it is important to understand how deferential is the Court's standard of review. "[I]t is only when a court 'cannot conscientiously find that the evidence supporting [the Board's] decision is substantial, when viewed in the light the record in its entirety furnishes, including the body of evidence opposed to the Board's view.'" *Loral Defense Systems-Akron v. NLRB*, 200 F.3d 436, 448 (6th Cir. 1999) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-88 (1951)). Given the testimony, evidentiary materials, and thorough factual findings and analysis of the ALJ in this case, the Court has no problem in finding that the NLRB's order is supported by substantial evidence and that, therefore, the order should be enforced.

---

## CONCURRING IN PART, DISSENTING IN PART

---

BOGGS, Chief Judge, concurring in part and dissenting in part. I agree with the holding of the court with regard to Bowling's violation of Horton's rights, and agree that we should enforce the NLRB's order with respect to him.

I generally agree with the tenor of the analysis with respect to the other two workers, Ashby and Hanks, but I respectfully dissent because I do not think that their activities were "protected concerted activities" *with respect to AK Steel*.

In my view, what happened here was that the obnoxious behavior of these employees with respect to a customer meant that the same activities that would have been protected had they been directed toward the employer or his officials were not protected when directed at a customer.

By analogy, workers are fully protected in expressing their view that "the boss is a fink." However, if in the course of making deliveries to a customer, they loudly opine to the same effect with respect to the boss of the customer, or picket the customer's establishment during the lunch break, I see nothing in the NLRA that protects those activities from discipline, either in effect, by the customer declaring those persons to be *personae non gratae*, or by the employer, for the legitimate reason that they have made themselves obnoxious to a customer.

The majority is quite correct that the employer may not throw blame on a customer for actions that would otherwise be unlawful (see pages 17-18), with respect to, for example, such issues as illegal employment discrimination. Similarly, if there were any evidence that the employer were using the alleged customer complaint as a pretext for his own unlawful

labor practices, I would have no objection to the majority's analysis. Thus, if the workers picketed their own plant with signs "the boss (and Customer X) are finks," and the boss then solicited the ire of Customer X, the majority's analysis would be exactly correct.

However, as I read both the record and the NLRB decision, there is no indication that Rydberg, the manager of AK Steel, needed any encouragement to be legitimately incensed at a supplier's employees, who came to his office deliberately bent on giving him "some hell" and complaining about the actions of their own bosses. The record is clear that Rydberg's complaint to Bowling (and his edict that he would no longer countenance any dealings with those employees) was completely unsolicited.

Under these circumstances, I respectfully dissent from the portion of the majority opinion requiring the reinstatement and payment of back pay to Ashby and Hanks.